IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN AVERY,                         )
                                     )   No.  08-139-HU
            Plaintiff,               )
                                     )
    v.                               )
                                     )   OPINION AND ORDER
DANIEL N. GORDON, DANIEL N.          )
GORDON, P.C., and FIRST              )
RESOLUTION INVESTMENT                )
CORPORATION,                         )
                                     )
            Defendants.              )
                                     )

Gregory L. Abbott
6635 N. Baltimore Street, Suite 206-M
Portland, Oregon 97203
        Attorney for plaintiff

Jonathan Radmacher
Peter Stutheit
McEwen Gisvold LLP
1600 Standard Plaza
1100 S.W. Sixth Avenue
Portland, Oregon 97204
        Attorneys for defendants

HUBEL, Magistrate Judge:

    This is an action for violation of the Fair Debt Collection
Practices Act, 15 U.S.C. § 1692 (FDCPA). Plaintiff Robin Avery
asserts three claims for relief against First Resolution Investment

OPINION AND ORDER Page 1

Corporation (First Resolution) and its collections attorney, Dan Gordon and Daniel N. Gordon, PC (the Gordon defendants). All parties move for summary judgment. Avery also moves for a stay of proceedings on her third claim for relief.

## Factual and Procedural Background

Robin Avery had a credit card account with Providian Bank. According to her declaration, "sometime after May 2001," she received from Providian an amended cardholder agreement dated "6/01." Declaration of Robin Avery ¶ 2, Exhibit 1, p. 7 ("the 6/01 Cardholder Agreement"). Defendants do not dispute that the 6/01 Cardholder Agreement governs Avery's account.

The 6/01 Cardholder Agreement had a choice of law provision calling for the application of federal law and the law of New Hampshire. Id. at Exhibit 1, p. 5. The law of New Hampshire provides for a three year statute of limitations on actions related to disputes over credit card accounts. N. H. Rev. Stat. Ann. 508:4; A & B Lumber Co. v. Vrusho, 871 A.2d 64, 66 (N.H. 2005)(under New Hampshire law, contract claim must be brought within three years of breach).

Avery made a payment on her account in November 2001, but admits that she failed to make the next payment, which was due December 16, 2001. Avery Declaration ¶ 3.

The debt was sold to First Resolution. On February 9, 2006, First Resolution commenced a civil action in the Circuit Court of Oregon for Washington County in an attempt to collect the debt, First Resolution Investment Corp. v. Avery, No. 060477CV (the first

OPINION AND ORDER Page 2

1  Washington County action). Gordon Defendants' Concise Statement of

2  Fact (CSF) No. 4. First Resolution was represented by Derrick

3  McGavic and Kristin Finney. Id.

4      In September 2006, Finney was contacted by Avery's attorney,

5  who told her he believed the first Washington County action was

6  time-barred. Soon thereafter, First Resolution filed a motion to

7  dismiss the Washington County action without prejudice. The

8  Washington County action was dismissed without prejudice on October

9  11, 2006. Gordon Defendants' CSF No. 7.

10     On December 19, 2006, Avery brought an action in this court,

11  Avery v. First Resolution Investment Corp. et al., CV 06-1812-HA,

12  against First Resolution, Mr. McGavic and Ms. Finney, asserting

13  claims for violation of the FDCPA and the Fair Credit Reporting

14  Act, 15 U.S.C. § 1681 (the first federal action). Declaration of

15  Daniel Gordon, Exhibit F. The claims were based on First

16  Resolution's attempt to collect on the debt in the first Washington

17  County action after expiration of the statute of limitations. Id.

18  The governing cardholder agreement was not attached to the

19  complaint. Although Avery alleged that the defendants had attempted

20  to collect interest, fees and charges not authorized by the

21  agreement or permitted by law, she did not specify the amount

22  defendants had attempted to collect or the amount of the debt she

23  owed, if any. Id.

24     On January 31, 2007, First Resolution, represented by the

25  Gordon defendants, asserted a counterclaim against Avery in the

26  first federal action, alleging that Avery owed First Resolution

27

28  OPINION AND ORDER Page 3

$3,807.28 as of June 24, 2002. Gordon Declaration, Exhibit C. As part of the counterclaim, First Resolution attached a copy of a cardholder agreement which it alleged was the basis for Avery's liability, dated "11/00" with an amendment dated "5/01" ("the 11/00 Cardholder Agreement"). Id.; Plaintiff's CSF, Exhibit A.

On cross motions for partial summary judgment, Judge Haggerty issued an Opinion and Order on May 25, 2007. Gordon Declaration, Exhibit A; see also Avery v. First Resolution Inv. Corp., CV 06-1812-HA, doc. # 47. In the Opinion and Order, Judge Haggerty held that collection of the debt was not time-barred under the laws of New Hampshire. Id. Judge Haggerty's reasoning was that under New Hampshire law, the statute of limitations is tolled during a party's absence from the state. Since Avery never lived in New Hampshire and was never there, the three year statute of limitations was tolled.

Judge Haggerty acknowledged that the New Hampshire tolling provision would preclude the statute of limitations from ever running on the underlying debt. Id. at p. 9. To resolve this problem, Judge Haggerty applied Oregon's limitation provision:

> If the court determines that the limitation period of another state applicable under ORS 12.430 and 12.440 is substantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against the claim, the limitation period of this state applies.

Or. Rev. Stat. § 12.450. Since Oregon law provides a six year statute of limitations for breach of contract claims, Or. Rev. Stat. § 12.090, Judge Haggerty concluded that under Oregon law the

OPINION AND ORDER Page 4

statute of limitations on Avery's debt would not expire until November 5, 2007, making the first Washington County action timely. Id. Accordingly, Judge Haggerty granted First Resolution's motion for partial summary judgment and denied Avery's motion for partial summary judgment. Id.

Judge Haggerty declined to take supplemental jurisdiction over the counterclaim. Id. On August 6, 2007, the parties submitted a proposed form of stipulated judgment (doc. # 56) dismissing Avery's complaint with prejudice. On August 7, 2007, Judge Haggerty entered a judgment dismissing Avery's complaint with prejudice and dismissing First Resolution's counterclaim without prejudice. (Doc. # 57). On August 17, 2007, Avery appealed Judge Haggerty's ruling that the first Washington County action was timely under New Hampshire law, and the dismissal of her FDCPA claim based on the filing of the first Washington County action. (Doc. # 59); Plaintiff's CSF Exhibit B, ¶ 32. That appeal is still pending.

Meanwhile, on June 8, 2007, First Resolution had commenced another action in Washington County, First Resolution Investment Corp. v. Avery, No. 072380CV (the second Washington County action). Abbott Declaration, Exhibit 1 and Plaintiff's CSF Exhibit B. In the complaint, First Resolution demanded the sum of $3,807.28, plus interest at the rate of 23.99% per annum from June 24, 2002, till paid. Abbott Declaration, Exhibit 1. Attached to the complaint was a cardholder agreement showing a date of "9/00." Id.

A stipulated document entitled "Submission of Controversy" was filed in the second Washington County case, stating that the amount

OPINION AND ORDER Page 5

1  owed at the time of default on December 16, 2001 was $2,971.82 plus
2  interest at 23.99% per annum, for a total due as of December 16,
3  2001 of $3,021.04. Plaintiff's CSF Exhibit B, ¶ 13.

4      On January 31, 2008, Avery filed the present action in this
5  court, based on the counterclaim filed by First Resolution and the
6  Gordon Defendants in the first federal action. She claimed
7  statutory damages under the FDCPA for First Resolution's attempt to
8  collect more than was authorized by the 6/01 Cardholder Agreement
9  and for its attempt to collect a debt pursuant to the terms of an
10 invalid cardholder agreement, i.e., the 11/00 Cardholder Agreement
11 attached to the counterclaim; she also sought to preserve her
12 rights if the Court of Appeals reversed Judge Haggerty's ruling
13 that First Resolution's action on Avery's debt was not time-barred.

14     On August 8, 2007, Avery filed a motion to dismiss the second
15 Washington County case, on the ground that another action was
16 pending between the same parties for the same cause of action. The
17 motion was denied on November 28, 2007. Plaintiff's CSF, Exhibit B,
18 ¶¶ 24, 31. The parties stipulated to facts for trial. See
19 Plaintiff's CSF, Exhibit B.

20                          **Standard**

21     The FDCPA prohibits false, deceptive, misleading, unfair or
22 harassing collection practices, 15 U.S.C. § 1692e. <u>Baker v. G.C.
23 Services Corp.</u>, 677 F.2d 775 (9th Cir. 1982). Among the
24 misrepresentations explicitly prohibited by the FDCPA are 1) the
25 false representation of the character, amount or legal status of
26 any debt, 15 U.S.C. § 1692e(2)(A); 2) the threat to take any action

27

28 OPINION AND ORDER Page 6

1  that cannot legally be taken or that is not intended to be taken,

2  15 U.S.C. § 1692e(5); and communicating or threatening to

3  communicate to any person credit information which is known or

4  which should be known to be false, including the failure to

5  communicate that a debt is disputed, 15 U.S.C. § 1692e(8). The

6  court determines whether a communication violates the FDCPA by

7  inquiring whether it is "likely to deceive or mislead a

8  hypothetical 'least sophisticated debtor.'" <u>Wade v. Regional Credit

9  Ass'n</u>, 87 F.3d 1098, 1100 (9th Cir. 1996).

10     The FDCPA regulates the conduct of "any person" in "any

11  business" whose 1) principal purpose is debt collection, or 2) who

12  regularly collects or attempts to collect debts, directly or

13  indirectly. 15 U.S.C. § 1692a(6). In <u>Heintz v. Jenkins</u>, 514 U.S.

14  291, 297 (1995), the Supreme Court held that debt collectors may

15  include attorneys litigating cases on behalf of their clients:

16  "[L]itigating ... seems simply one way of collecting a debt." A

17  lawyer who regularly tries to obtain payment of consumer debts

18  through legal proceedings is a lawyer who regularly "attempts" to

19  "collect" those consumer debts. <u>Id.</u>

20     Section 1692k provides for two different causes of action, a

21  compensatory one under § 1692(a)(1), which provides the injured

22  person a remedy for actual and additional damages for a debt

23  collector's failure to comply with the FDCPA, and a regulatory one

24  under § 1692k(a)(2)(A) which allows the court to award additional

25  or statutory damages not exceeding $1,000 per proceeding, per

26  defendant, without regard to the actual number of violations and

27

28  OPINION AND ORDER Page 7

without proof of actual damages. These so-called statutory damages are awarded based upon mandatory consideration of certain factors. Id. at § 1692(k). The FDCPA has been construed as a strict liability statute, subject to a bona fide error defense. See § 1692(a)-(d); Clark v. Capital Credit & Collection Services, 460 F.3d 1162, 1176 & n. 11 (9th Cir. 2006).

**Discussion**

A.   Avery's Motion for Summary Judgment and Stay on Third Claim

Avery's three causes of action are for 1) attempted collection of unauthorized charges, based on incorrect allegations of the amount due (i.e., the inconsistency between the stipulation in the second Washington County action that the amount of the debt was $3,021.04, and the demand for $3,807.28, on the counterclaim of the first federal action); 2) attempted collection based on an invalid cardholder agreement (i.e., the allegation in the counterclaim that the 11/00 cardholder agreement applied, even though the defendants do not now dispute that the 6/01 cardholder agreement is applicable); and 3) attempted collection of a time-barred debt.

Avery asserts that there are no genuine issues of material fact on the first two claims and that she is entitled to judgment as a matter of law. She asks that the court enter a stay of proceedings on her third claim pending the appeal of Judge Haggerty's ruling.

1.   Attempted collection of unauthorized charges

In the first federal action, First Resolution counterclaimed for the sum of $3,807.28 plus 23.99% per annum interest from June

OPINION AND ORDER Page 8

24, 2002 until paid. See Plaintiff's CSF Exhibit A (First Resolution's counterclaim). Avery directs the court to the Submission of Controversy submitted in the second Washington County Action, where First Resolution stipulated that the amount owed was $3,021.04, plus interest at 23.99%, as of December 16, 2001. See id. Exhibit B, ¶ 13. Avery argues that 23.99% interest accrued on $3,021.04 to June 24, 2001 would yield a total of $3,398.30, not $3,807.28. Thus, she argues, First Resolution demanded, in the first federal action, $408.98 more than the amount First Resolution agreed was due in the second Washington County action.

I am unpersuaded by Avery's argument that she is entitled to summary judgment on her FDCPA claim based on the different amounts claimed. The stipulation in the second Washington County action, which was for less than the amount originally demanded in the counterclaim, does not constitute an admission that the amount demanded in the counterclaim was incorrect. Further, the absence of any definitive calculation, by either side, of the amount actually due under the 6/01 cardholder agreement precludes a finding that there is no genuine issue of material fact on this issue. The court is unable, on this record, to conclude that no reasonable jury could find that the amount owed was any amount other than the amount on the spreadsheet proffered by Avery, or the amount claimed by First Resolution, or the amount shown on the billing statements. Neither side is entitled to summary judgment.

    2.   Invalid cardholder agreement

In the first federal action, First Resolution alleged that

OPINION AND ORDER Page 9

1   Avery was liable pursuant to the terms of the 11/00 Cardholder
2   Agreement, as amended and superseded by the terms of the 5/01
3   Cardholder Agreement. Avery asserts that the governing agreement is
4   the 6/01 Cardholder Agreement. Defendants do not dispute this
5   assertion. The terms of the two agreements are materially
6   different, particularly because the 6/01 Cardholder Agreement has
7   a grace period and no annual fee, but also because the fees for
8   cash advances under the 11/00 Cardholder Agreement are 5% while the
9   6/01 Cardholder Agreement only charges 3%. Further, the 5/01
10  Amendment to the 11/00 Cardholder Agreement provides for a 27.99%
11  APR, while the 6/01 Cardholder Agreement provided for finance
12  charges at 23.99% APR.

13      Avery asserts that First Resolution's allegation in the first
14  federal action that the debt was governed by the 11/00 Cardholder
15  Agreement, rather than the 6/01 Cardholder Agreement, constituted
16  1) false representation of the character, amount or legal status of
17  the debt; 2) a false representation that Avery was liable for the
18  debt pursuant to terms that did not apply to her debt; and 3) the
19  use of a false, deceptive, or misleading representation in
20  connection with collection of the debt, all in violation of 15
21  U.S.C. § 1692(e).

22      Since Avery incurred no damages as a result of this conduct,
23  she asks the court to award her $1,000 per defendant as statutory
24  damages, along with her costs and attorney's fees.

25      Defendants respond that Avery has not met her burden of
26  showing "with specificity" how a particular action "falsely

27

28  OPINION AND ORDER Page 10

represents the character, amount or legal status" of a debt, citing Dunlap v. Credit Protection Association, LP, 49 F.3d 1011 (9th Cir. 2005). They argue that the mere attachment of the 11/00 Cardholder Agreement to the counterclaim was not necessarily a misrepresentation of the character, amount or legal status of the debt, because 1) it is undisputed that the debt was a credit card debt, and it is undisputed that defendants represented it as such in the counterclaim; 2) there is no evidence that defendants sought to collect anything more than what Avery actually owed; and 3) defendants did not misrepresent the "legal status" of the debt, because Avery concedes that she used the card and defaulted on her payment obligations. Plaintiff's CSF 1, 2. Defendants assert that they accurately represented the "legal status" of default in the counterclaim, irrespective of which cardholder agreement they attached.

Defendants also challenge Avery's claim that defendants "falsely represented that plaintiff was liable for the Debt pursuant to terms that did not apply." Again, defendants argue that merely attaching the 11/00 Cardholder Agreement fails to qualify as specific identification of, and evidence supporting, an alleged misrepresentation of the debt under Dunlap. They contend that while Avery may have identified differences between certain terms of the 6/01 Cardholder Agreement and the 11/00 Cardholder Agreement, she has presented no evidence that the $3,807.12 sought in the counterclaim was not authorized by the 6/01 Cardholder Agreement. Defendants assert that merely attaching a superseded agreement,

OPINION AND ORDER Page 11

1  without attempting to collect anything pursuant to the terms of
2  that agreement, does not violate the FDCPA.

3       In her reply, Avery argues that defendants themselves alleged
4  in their counterclaim all the facts necessary to make out her
5  claim: that pursuant to the Cardholder Agreement, Avery purchased
6  goods, merchandise, and/or services and/or received advances using
7  credit card under the agreement, that each use of the card
8  constituted an agreement to be bound by the agreement, and that
9  Avery breached and was in default of the agreement by failing to
10 make the monthly payments. Avery contends that the defendants also
11 sought to collect attorney fees in the counterclaim by alleging
12 that in the Cardholder Agreement, Avery had promised to pay
13 collection costs incurred, including attorney's fees, and that
14 First Resolution was entitled to those attorney's fees and costs.
15 See Gordon Declaration, Exhibit C; Plaintiff's CSF Exhibit A
16 (counterclaim). She asserts that all these statements were false
17 because she did not purchase anything under the 11/00 Cardholder
18 Agreement attached to the counterclaim, so that each use of the
19 credit card did not constitute her agreement to be bound by its
20 terms, she was not in breach, was not in default of the 11/00
21 Cardholder Agreement, and did not agree to pay attorney's fees and
22 costs under the 11/00 Cardholder Agreement.

23      She argues that this claim is based upon defendants' false
24 representations and allegations as to the basis of her liability
25 for the debt, not the amount; because defendants' representations
26 in their counterclaim were false, and the applicable agreement is

27

28 OPINION AND ORDER Page 12

the 6/01 Cardholder Agreement, they are liable under the FDCPA.

Defendants have not demonstrated the existence of a genuine issue of material fact on this claim. Avery's motion for summary judgment is granted.

3.  <u>Attempted collection of a time-barred debt</u>

Avery asserts that this claim is brought on a precautionary basis, to preserve it if Judge Haggerty's ruling in the first federal action is reversed. Avery asks the court to stay all proceedings under this claim pending the ruling of the Court of Appeals.

Defendants challenge Avery's request for a stay, arguing that the court is precluded from granting the request by Judge Haggerty's Opinion and Order. Defendants rely on <u>Tripati v. Henman</u>, 857 F.2d 1366, 1368 (9th Cir. 1988):

> [t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal. To deny preclusion in these circumstances would lead to an absurd result: Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation.

(internal citations and quotations omitted). Defendants point out that Avery has now filed three FDCPA cases in this court, all asserting that the statute of limitations on the debt expired in November 2001: the first federal action, this action, and <u>Avery v. Aylsworth</u>, CV 08-695-HA, filed after this action in June 2008.

In reply, Avery asserts that defendants have pointed to no prejudice to them that would be caused by a stay and that a stay, being equitable in nature, is well within the court's discretion.

OPINION AND ORDER Page 13

1 She also points out that to the extent she prevails on her other

2 two claims for relief, and is awarded the full $1,000 per

3 defendant, the third claim for relief would become moot.

4     Avery's motion for stay of proceedings on her third claim for

5 relief is denied. Defendants' motion against the third claim for

6 relief, on the merits, is discussed below.

7 B.   <u>Defendants' Motions for Summary Judgment</u>

8     The Gordon defendants move for summary judgment in their favor

9 on the following grounds:

10     First, that Avery's claims are barred by the FDCPA's one-year

11 statute of limitations.

12     Second, that her claims fail as a matter of law because

13 defendants never communicated directly with her in connection with

14 the counterclaim; all communications were through lawyers.

15     Third, that Avery's third claim for relief, which is that

16 First Resolution's counterclaim in the first federal action was

17 beyond the statute of limitations, is barred by issue preclusion.

18     Fourth, that defendants are entitled to summary judgment under

19 the FDCPA's bona fide error defense, based on the reliance of the

20 Gordon defendants on information provided by First Resolution and

21 procedures he maintains to avoid errors in collections actions.

22     Defendant First Resolution incorporates by reference all

23 arguments of the Gordon defendants and adds another, which is that

24 <u>all</u> of Avery's claims, and not just the third, are precluded by the

25 judgment entered by Judge Haggerty.

26 ///

27

28 OPINION AND ORDER Page 14

1    Avery objects to the court's consideration of First
2  Resolution's motion for summary judgment because First Resolution
3  has not submitted its own Concise Statement of Fact, as required by
4  LR 56.1(a)(2), and has not specifically incorporated any arguments,
5  briefing or documents from the Gordon defendants' motion. The
6  objection is overruled.

7       1.   FDCPA claims time-barred

8       The defendants rely on the FDCPA's statute of limitations,
9  which provides that actions to enforce liability for violations of
10 the FDCPA must be brought "within one year from the date on which
11 the violation occurs." 15 U.S.C. § 1692k(d). When the alleged
12 violation is the filing of a complaint, the statute begins to run
13 on the day the complaint is filed. Naas v. Stolman, 130 F.3d 892,
14 893 (9th Cir. 1997)(filing date was the debt collector's "last
15 opportunity to comply with the Act"). Id.

16      The counterclaim was filed in the first federal action on
17 January 31, 2007. Defendants argue that the statute of limitations
18 expired 365 days later, on January 30, 2008, citing an Eighth
19 Circuit case, Mattson v. U.S. West Communications, 967 F.2d 259 (8th
20 Cir. 1992). The present action was filed on January 31, 2008.

21      Avery challenges the authority of Mattson, arguing that every
22 other circuit to have considered the issue has rejected the holding
23 in Mattson. [Citing Johnson v. Riddle, 305 F.3d 1107 (10th Cir.
24 2002); Maloy v. Phillips, 64 F.3d 607 (11th Cir. 1995); and Clark
25 v. Bonded Adjustment Co., 176 F. Supp.2d 1062 (E.D. Wash. 2001)].
26 In Riddle, the court found Mattson "dubious authority" because it
27
28 OPINION AND ORDER Page 15

1  relied for its conclusion on a single case, <u>Rust v. Quality Car</u>

2  <u>Corral, Inc.</u>, 614 F.2d 1118 (6th Cir. 1980), and the <u>Rust</u> case has

3  since been overruled on the same grounds by the Sixth Circuit,

4  <u>Bartlik v. United States Dept. of Labor</u>, 62 F.3d 163, 166 (6th Cir.

5  1995)(en banc)(holding that computation of time under the Energy

6  Reorganization Act, providing for judicial review within 60 days of

7  the issuance of the Secretary's order, was governed by Rule 6(a),

8  which added a 61st day because the last day was a Sunday).6

9       In this jurisdiction, "one year" means one calendar year, not

10  365 days. <u>United States v. Tawab</u>, 984 F.2d 1533, 1534 (9th Cir.

11  1993). In the <u>Clark</u> case, the court relied on <u>Tawab</u> to conclude

12  that an action for violation of the FDCPA was timely because it was

13  filed on the first week day after the violation. The <u>Clark</u> court

14  noted that some courts had found Rule 6(a) not applicable to the

15  FDCPA, specifically the <u>Mattson</u> case, but declined to follow the

16  rationale of <u>Mattson</u>, instead adopting the view taken by the

17  Eleventh Circuit in <u>Maloy</u>. The <u>Clark</u> court also acknowledged that

18  in <u>Morgovsky v. Creditors Collection Svc. of San Francisco</u>, 1995 WL

19  316970 at *1, 2 (N.D. Cal. 1995), the district court had adopted

20  <u>Mattson</u>'s holding; the <u>Clark</u> court declined to follow <u>Morgovsky</u>

21  because that decision, like <u>Mattson</u>, did not involve analysis of

22  the statutory text or legislative history.

23       I find the <u>Clark</u> case persuasive. Because the counterclaim was

24  filed January 31, 2007, the statute of limitations began to run on

25  that date; this action, filed January 31, 2008, is therefore timely

26  under the FDCPA's one year statute of limitations. The defendants'

27

28  OPINION AND ORDER Page 16

1 motion for partial summary judgment on limitations grounds is
2 therefore denied.

3      2.  No direct communication

4      Defendants assert that Avery's claims fail as a matter of law
5 because it is undisputed that in serving the counterclaim
6 electronically, defendants communicated only with Avery's attorney,
7 and never with her directly.[1] Daniel Gordon states in his
8 Declaration that because Avery was represented by an attorney at
9 the time he began collection attempts (i.e., at the time he filed
10 the counterclaim in the first federal action), he never contacted
11 Avery about the debt.

12     The defendants argue that in this jurisdiction, communications
13 directed solely at a debtor's attorney do not violate the FDCPA as
14 a matter of law, citing Guerrero v. RJM Acquisitions LLC, 499 F.3d
15 926 (9th Cir. 2007)(debt collector's misleading communications to
16 debtor's attorney, not to debtor, not actionable under FDCPA). They
17 contend that this rule is consistent with the purpose of the
18 statute, which was enacted to protect vulnerable and
19 unsophisticated debtors from abuse, harassment and deceptive
20 collection practices. See S. Rep. 95-382, reprinted in 1977
21 U.S.C.C.A.N. 1695, 1696; Guerrero, 499 F.3d at 935. Defendants
22 argue that the FDCPA's concerns are particularly inapplicable when
23 the communication at issue is a pleading, because a pleading is
24 "not a demand to the debtor," quoting Argentieri v. Fisher

25 _____

26     [1] Under the FDCPA, a debt collector may not communicate with
   a consumer if the debt collector knows the consumer is
27 represented by an attorney. 15 U.S.C. § 1692c(a)(2).

28 OPINION AND ORDER Page 17

1  Landscapes, 15 F. Supp.2d 55 (D. Mass. 1998)(unfounded request for

2  attorneys fees in state court complaint not a violation of FDCPA).

3  Defendants argue that Avery's first and second claims for relief,

4  which are based on allegations made in the counterclaim, fail as a

5  matter of law because they were not demands made on Avery directly.

6      Avery counters that Guerrero is limited to extrajudicial

7  communications and does not extend to misrepresentations during

8  litigation, citing Heintz, 514 U.S. at 297 (statutory term "debt

9  collector" includes attorneys and others engaged in litigation).

10  Avery distinguishes Guerrero on the ground that it involved

11  communication directed solely at the attorney, unaccompanied by any

12  threat to the debtor. 499 F.3d at 936. The court emphasized that

13          the Act applies to conduct aimed at a debtor himself

             regardless of whether he has retained counsel. We merely

14          hold that when the debt collector ceases contact with the

             debtor, and instead communicates exclusively with an

15          attorney hired to represent the debtor in the matter, the

             Act's strictures no longer apply to those communications.

16

17  499 F.3d at 939.

18      Avery also challenges the defendants' characterization of the

19  holding in Guerrero, arguing that the FDCPA distinguishes between

20  regulation of collection activity and regulation of communication,

21  having separate provisions that deal with communication. See,

22  (e.g., §§ 1692b (communication with third parties to obtain

23  location information), 1692c (conduct actionable as communication),

24  1692e(3)(false communication), 1692e(8) (communication of credit

25  information), 1692e(9)(regulating written communication)

26  1692e(11)(disclosures in communications), 1692f(5)(charges related

27

28  OPINION AND ORDER Page 18

1 to communications), 1692f(7)(communication through the mail),
2 1692f(8)(communication through the mail), and 1692g (disclosure of
3 consumer rights). She contends that the distinction between
4 regulation of collection activity and regulation of communication
5 is also seen in a recent amendment to the FDCPA, with § 1692g(b)
6 expressly distinguishing between collection activities and
7 communications, and § 1692g(d) excluding § 1692g(a) from formal
8 pleadings in a civil action.

9     Avery argues that the construction sought by the Gordon
10 defendants was decided adversely to them in <u>Heintz</u>, where the
11 Supreme Court held that the FDCPA applies to attorneys even when
12 the collection activity consists of litigation. Further, she
13 argues, the court in <u>Guerrero</u> qualified the communication at issue
14 as a responsive letter to an attorney's letter, one which was
15 directed exclusively at the attorney.

16     I find Avery's arguments persuasive, and additionally conclude
17 that a counterclaim for a debt is not a representation made to an
18 attorney, but rather a demand for money made on the debtor, through
19 a pleading rather than a letter or a phone call. Under <u>Guerrero</u> the
20 issue is whether the conduct is aimed at the debtor, regardless of
21 whether the debtor has a lawyer. The <u>Guerrero</u> court held that the
22 letter from the debt collector was directed solely at the
23 creditor's lawyer, because the letter stated that defendant was not
24 a "collection agency," which was true, and that it was therefore
25 not subject to the FDCPA, which was not true.

26     Unlike the letter in <u>Guerrero</u>, the counterclaim in the first
27
28 OPINION AND ORDER Page 19

1  federal action was directed, not to Avery's attorney, but at Avery.

2  Guerrero is distinguishable from this case. Defendants' motion for

3  summary judgment on this basis is denied.

   3.   Claim preclusion

5  The defendants argue that under the doctrine of claim

6  preclusion, Judge Haggerty's ruling bars Avery from asserting her

7  third claim for relief, which is for violation of the FDCPA based

8  on a collection action that is not timely.

9  The defendants argue, correctly, that the judgment entered by

10 Judge Haggerty retains its preclusive effect while an appeal is

11 pending. Collins v. D. R. Horton, Inc., 505 F.3d 874, 883 (9th Cir.

12 2007). I agree Avery's third claim for relief is barred by claim

13 preclusion.

14 First Resolution has a separate claim preclusion argument,

15 arguing that the first and second claims for relief in this case

16 were also asserted in the first federal action, so that Avery's

17 dismissal with prejudice of her claims against First Resolution

18 prejudice in the first federal action, except for her claim that

19 the debt was time-barred, bars the assertion of the first and

20 second claims for relief here.

21 The complaint filed in the first federal action, Declaration

22 of Daniel Gordon Exhibit F, names defendants First Resolution, Mr.

23 McGavic, and Ms. Finney, the latter two being the lawyers who

24 represented First Resolution in the first Washington County action.

25 The complaint alleges claims for violation of the FDCPA based on

26 the filing of the first Washington County action.

27

28 OPINION AND ORDER Page 20

1   Avery argues that claim preclusion does not apply because the
2   parties and claims in the first federal action are not the same
3   parties named and claims asserted in this action. She contends that
4   at the time the first federal action was filed, her first and
5   second claims for relief in this case did not yet exist, because
6   they are based on the counterclaim filed in that action. She argues
7   that she has not had any prior opportunity to litigate the first
8   and second claims for relief in this case.

9       I agree with Ms. Avery's contention that the first and second
10  claims for relief in this case are premised on the counterclaim
11  filed in the first federal action: the allegation that the 11/00
12  cardholder agreement, as amended in May 2001, governed the debt;
13  and the allegation that in the counterclaim, First Resolution
14  attempted to collect more than was authorized by the 6/01
15  cardholder agreement. Neither of these claims was dismissed when
16  Avery dismissed her complaint in the first federal action, because
17  Avery's complaint in the first federal action did not refer to or
18  incorporate a specific cardholder agreement. Further, as I have
19  concluded, the issue of how much Avery owes First Resolution under
20  the terms of the 6/01 cardholder agreement is a question of fact
21  that has never been determined. First Resolution's motion for
22  summary judgment on the first and second claims for relief, based
23  on claim preclusion, is denied.

24          4.  <u>Bona fide error defense</u>

25      The Gordon defendants move for summary judgment in their favor
26  based on the bona fide error defense.

27

28  OPINION AND ORDER Page 21

1    Section 1692k(c) provides that a debt collector

2    may not be held liable in any action brought under this
     subchapter if the debt collector shows by a preponderance
3    of the evidence that the violation was not intentional
     and resulted from a bona fide error notwithstanding the
4    maintenance of procedures reasonably adapted to avoid any
     such error.
5

6    The FDCPA makes debt collectors liable for violations that are

7    not knowing or intentional; the bona fide error defense provides a

8    "narrow exception to strict liability." Reichert v. National Credit

9    Systems, Inc., 531 F.3d 1002, 1005 (9th Cir. 2008). The bona fide

10   error defense is an affirmative defense, for which the debt

11   collector has the burden of proof. Reichert, 531 F.3d at 1006; Fox

12   v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1514 (9th Cir. 1994).

13   The Gordon defendants assert that as a matter of law, they

14   were entitled to rely on representations from First Resolution

15   about the validity of the debt, and that the FDCPA does not require

16   an independent investigation of the information provided by clients

17   when a debt collector tries to collect a debt. The Gordon

18   defendants rely on Hulse v. Ocwen Federal Bank, 195 F. Supp.2d

19   1188, 1210 (D. Or. 2002), and on the Ninth Circuit decision in

20   Clark. In Clark, the court quoted with approval district court

21   cases from other jurisdictions holding that a debt collector may

22   reasonably rely upon information provided by a creditor who has

23   provided accurate information in the past. The Clark court also

24   held, consistent with the Hulse decision, that the FDCPA does not

25   impose upon debt collectors any duty to investigate independently

26   the claims presented by the creditor. The Clark case adopted "as a

27

28   OPINION AND ORDER Page 22

1  baseline" the holding of the Fourth Circuit in <u>Chaudhry v.</u>
2  <u>Gallerizzo</u>, 174 F.3d 394 (4th Cir. 1999) that at a minimum,
3  "verification of a debt involves nothing more than the debt
4  collector confirming in writing that the amount being demanded is
5  what the creditor is claiming is owed." <u>Clark</u>, 460 F.3d at 1173-74.

6      However, the bona fide error defense does not protect a debt
7  collector whose reliance on a creditor's representation is
8  unreasonable. <u>Reichert</u>, 531 F.3d at 1006; <u>Clark</u>, 460 F.3d at 1177.
9  A debt collector also fails to meet its burden under the defense
10 when it fails to produce evidence of "reasonable preventive
11 procedures" aimed at avoiding the errors. <u>Reichert</u>, 531 F.3d at
12 1006.

13     Daniel Gordon has submitted a declaration stating that when he
14 represented First Resolution in the first federal action, he was
15 directed by First Resolution to obtain Mr. McGavic's file and to
16 use the information in that file to prosecute the counterclaim.
17 Gordon states that he reasonably relied on the information in the
18 McGavick file when he filed the counterclaim; that he had
19 previously represented First Resolution; and that First Resolution
20 had been reliable in the past.

21     Gordon states that he maintains many procedures to prevent
22 FDCPA violations, including employing a compliance officer,
23 requiring that new employees pass a test on the FDCPA, testing
24 employees yearly on the FDCPA, scrubbing new files upon intake to
25 determine whether the debtor has filed for bankruptcy or is
26 deceased, periodically checking all files in the office to

27

28 OPINION AND ORDER Page 23

determine that the debt is within the applicable statute of limitations, contacting the creditor upon receiving a claim from a debtor disputing the amount or existence of the debt, and ceasing collection efforts if he is not satisfied, after consulting with the creditor, that the debtor owes the debt.

In <u>Reichert</u>, the court held that the question whether the debt collector has made a sufficient showing that it employed procedures "reasonably adapted to avoid the error that occurred" [sic] is a "fact intensive inquiry that few prior cases have addressed." 531 F.3d at 1006.

I conclude, on the basis of the record before me, that a genuine issue of material fact exists on whether 1) Gordon's reliance on First Resolution and the McGavic file was reasonable; and 2) whether the Gordon defendants' office procedures would reasonably be expected to prevent the errors at issue in this case. Accordingly, the Gordon defendants' motion for summary judgment in their favor on the bona fide error defense is denied.

**Conclusion**

Avery's motion for summary judgment (doc. # 22) is GRANTED for her second claim for relief, based on an invalid cardholder agreement, and DENIED on the first and third claims for relief, based on the amount of the debt and the filing of a time-barred action. Avery's motion for a stay of proceedings on the third claim for relief (doc. # 22) is DENIED.

The defendants' motions for summary judgment (doc. ## 15, 16) are DENIED for the first and second claims for relief, and GRANTED

OPINION AND ORDER Page 24

for the third claim for relief. The Gordon defendants' motion for summary judgment on the bona fide error defense (doc. # 16) is DENIED.

Plaintiff's third claim for relief is dismissed with prejudice.

IT IS SO ORDERED.

Dated this 27th day of  October , 2008.


/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge